UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CAROL GOODLACE, ) | CASE NO. 1:13-CV-451 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE MCHARGH |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL ) | **MEMORANDUM OPINION & ORDER** |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. | |

This case is before the undersigned pursuant to the consent of the parties. (Doc. 13). The issue before the Court is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Carol Goodlace's applications for a Period of Disability and Disability Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and therefore, conclusive.

For the reasons set for the below, the Court AFFIRMS the decision of the Commissioner.

I. INTRODUCTION & PROCEDURAL HISTORY

On June 10, 2010, Plaintiff Carol Goodlace ("Plaintiff" or "Goodlace") filed applications for Supplemental Security Income ("SSI") and a period of Disability Insurance Benefits ("DIB") alleging that she became disabled on October 16, 2004 due to irritable bowel syndrome (IBS); gastroesophageal reflux disease (GERD); arthritis of the right hip, knee, and back; sinusitis; migraine headaches; anxiety; and depression. (Tr. 129-32, 142-48, 153, 257). Plaintiff's DIB

1

application was denied initially and upon reconsideration.[1] (Tr. 90-92, 98-104). Thereafter, Plaintiff requested a hearing to contest the denial of her application for benefits. (Tr. 105-06).

On September 9, 2011, Administrative Law Judge ("ALJ") Charles Shinn convened a hearing to evaluate Plaintiff's application. (Tr. 32-71). Plaintiff was represented by counsel and testified during the hearing. (*Id.*). Vocational expert ("VE"), Deborah Lee, also testified before the ALJ. (*Id.*).

On October 7, 2011, the ALJ issued an unfavorable decision in which he applied the five-step sequential analysis,[2] and concluded that Plaintiff was not disabled. (Tr. 16-27). Following

---

[1] An initial determination had not yet been made on Plaintiff's SSI claim as of the administrative hearing. (Tr. 16, 27). The claim was escalated to the hearing level and was considered with Plaintiff's DIB claim. (Tr. 35).

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 6). But, the council denied Plaintiff's request thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Goodlace now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Goodlace, was born on October 6, 1971, and was 40 years old on the date of her hearing before the ALJ. (Tr. 149). Accordingly, at all relevant times, she was deemed a "younger person" for Social Security purposes. 20 C.F.R. §§ 404.1563(c), 416.963(d). Plaintiff has past experience working as secretary and customer service representative. (Tr. 63-64).

## II. SUMMARY OF THE ALJ'S RULING

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since October 16, 2004, the alleged onset date.

3. The claimant has the following severe impairments: cervical degenerative disc disease, cervical degenerative joint disease, headaches due to independent cervicogenic disorder and analgesic overuse, and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work with the following limitations. Specifically, she can lift, carry, push and pull 10 pounds occasionally and 5 pounds frequently. She can sit for 6 hours of an 8-hour workday. She can stand and walk for 2 hours each of an 8-hour workday. She cannot climb ladders, ropes, and scaffolds. She must avoid all workplace hazards and dangerous machinery.

6. The claimant is capable of performing past relevant work as a secretary and customer service representative. The work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 16, 2004 through the date of this decision.

(Tr. 18-26) (internal citations omitted).

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel,* 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059

4

(6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Garner, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).

V.  ANALYSIS

Goodlace argues that the ALJ erred in evaluating whether some of her impairments qualified as "severe" under step two of the sequential analysis. She also maintains that the ALJ should have attributed controlling weight to the opinions of her treating source. For the reasons that follow, Plaintiff's allegations of error do not warrant remand.

**A. The ALJ's step two finding**

The second step in the sequential analysis, determining whether a claimant suffers from any severe impairment, is used as a screening tool, permitting ALJs to dismiss "totally groundless" claims from a medical standpoint at an early stage in the analysis. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). At this step, the claimant must show that he has an impairment which significantly interferes with his ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c); 416.920(c). The ALJ's ruling here is viewed under a *de minimis* standard. Salmi v. Sec'y of Health & Human Servs., 774 F.2d 685, 691-92 (6th Cir. 1985); Childrey v. Chater, 91 F.3d 143 (6th Cir. 1996) (Table). Accordingly, a claimant's impairment will only be construed as non-severe when it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education and work experience." Farris v. Sec'y of Health & Human

5

Case: 1:13-cv-00451-KSM  Doc #: 21  Filed: 03/10/14  6 of 12.  PageID #: 753

*Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (*citing* *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).

In the present case, Goodlace argues that the ALJ erred at step two of the sequential evaluation processes by finding that her diagnoses of IBS and GERD were not severe impairments. Whether or not the ALJ correctly labeled these impairments as non-severe, any potential error in doing so was harmless. As long as the ALJ finds the claimant to suffer from at least one severe impairment, and continues to evaluate the claimant's severe and non-severe impairments at the latter stages of the sequential analysis, an ALJ's failure to properly name one of a claimant's impairments as severe will not constitute reversible error. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).

Here, while the ALJ found Plaintiff's IBS and GERD were non-severe impairments, he determined that Plaintiff suffered from a total of four severe impairments. (Tr. 18). The ALJ then provided a lengthy and detailed discussion of Plaintiff's medical evidence as it related to her IBS and GERD. (Tr. 18-20). The ALJ's analysis of Plaintiff's IBS and GERD was included in the ALJ's opinion at step two rather than under the RFC analysis. (*Id.*). Nonetheless, the ALJ's discussion was essentially tantamount to an evaluation that would have been included as part of the RFC formulation. With that in mind, it would be futile to remand the case for the ALJ to simply shift this analysis to a later page in his opinion so that it would technically fall under the RFC evaluation.

When addressing Plaintiff's IBS and GERD, the ALJ expressly recognized Plaintiff's allegation that she required at least two breaks, of forty-five minutes each, to use the restroom. (Tr. 19, 169). However, the ALJ rejected this limitation because the objective evidence showed

Goodlace was not limited by these impairments to the extreme extent that she claimed. As the ALJ explained, the findings from various tests related to her gastrointestinal health showed normal findings overall. For example, in October 2007, Plaintiff reported pain in her abdomen and diarrhea to Dr. Robert Straub. (Tr. 333-34). Thereafter, the doctor performed an EGD and opined that Plaintiff had "diminutive external hemorrhoids," but a normal esophagus, stomach, and duodenum. (Tr. 333). In November of 2007, Dr. Eric Flint's study of Goodlace's small bowel tract showed unremarkable results. (Tr. 337). While Dr. Enrique Cotes opined that Plaintiff had some "non-specific chronic inflammation" in her small bowel with fragments of mucosa, there was no showing of vilous atrophy or "pathogenic micororganisms." (Tr. 407-08). After an examination of a biopsy, Dr. Ishrat Butt found the biopsy was "ok," aside from gastritis, and recommended that Plaintiff take Omeprazole. (Tr. 396). On December 9, 2010, gastroenterologist Dr. Joseph Moses performed a physical examination of Plaintiff, which revealed normal bowel sounds and an abdomen that was flat with no distention. (Tr. 471). The ALJ's conclusion that the objective evidence related to Goodlace's IBS and GERD indicated generally insignificant findings, undermining the limitations she suggests, is supported by substantial evidence.

While Plaintiff argues that she required restroom breaks and would be off task due to IBS and GERD symptoms, she points to no medical source suggesting these limitations. Despite Plaintiff presenting to a range of specialists to investigate her complaints, none affirmed the limitations she maintains should be included in the RFC. The mere diagnosis of a condition does not speak to its severity or indicate the functional limitations caused by the ailment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). As a result, the fact that Plaintiff with was diagnosed with IBS and GERD, and had some irregularities in the various

gastro-intestinal tests performed, does not show that those conditions resulted in disabling limitations, as she claims. Additionally, the ALJ found Plaintiff less than credible, and as a result, he was not required to credit Plaintiff's subjective complaints regarding these limitations in the RFC. Goodlace does not now contest the ALJ's credibility finding. For the above reasons, the undersigned concludes that substantial evidence supports the ALJ's decision as it relates to Plaintiff's IBS and GERD.

### B. Treating Physician

Plaintiff argues that the ALJ failed to grant appropriate weight to the opinion of her treating physician, Dr. Philip Tomsik. On September 8, 2011, Dr. Tomsik completed a physical residual functional capacity assessment. (Tr. 580-81). The doctor opined that Plaintiff could lift up to ten pounds occasionally and less than ten pounds frequently, stand and walk for four hours in an eight hour day, and sit up to six hours in an eight hour day. (Tr. 580). Dr. Tomsik recommended that Plaintiff needed to periodically alternate sitting, standing, or walking every 30 minutes. (Tr. 580). To justify the above medical findings the doctor wrote that Plaintiff had a history of degenerative disc disease of the cervical spine, multiple areas of pain, and a history of fibromyalgia. (Tr. 581). The doctor also found that Plaintiff could only perform handling and fingering frequently. To justify this finding, Dr. Tomsik wrote that Plaintiff suffered from a history of chronic pain and myositis coupled with evidence of degenerative disc disease in her cervical spine. (*Id.*). Concluding his report, the doctor opined that Plaintiff would miss work two to three times per month. (*Id.*).

It is well-established that an ALJ must give special attention to the findings of the claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security

8

Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2). The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544. When a treating source's opinion is not entitled to controlling weight, the ALJ must determine how much weight to assign to the opinion by applying factors set forth in the governing regulations. 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6). The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinions and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (*quoting* S.S.R. 96-2p, 1996 WL 374188, at *5).

Here, the ALJ attributed little weight to Dr. Tomsik's RFC assessment from September 2011. (Tr. 23). The ALJ explained that he did so because Dr. Tomsik did not identify specific medical records that would support the alternating sit/stand options and bilateral gross and fine manipulative limitations set forth in the assessment. (Tr. 24). Contrary to Plaintiff's argument, this was sufficient reason for discounting the doctor's opinions.

Generally, the ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Furthermore the regulations provide that when evaluating opinion evidence, the ALJ ought to consider how well-supported the opinion is. Specifically, the "more a medical source presents relevant evidence to support an opinion, particularly medical signs and

9

laboratory findings, the more weight [the Commissioner] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the Commissioner] will give that opinion." 20 C.F.R. § 404.1527(c)(3).

Here, as the ALJ observed, Dr. Tomsik did not reference any medical records in support of his limitations.  The lack of support for the recommendations made it reasonable for the ALJ to give those limitations lesser weight.  On his RFC form, instead of pointing to specific supporting medical evidence for the recommendations, Dr. Tomsik listed Plaintiff's diagnosis of degenerative disc disease in the cervical spine, her history of fibromyalgia, and her chronic pain, as justifications for his suggested RFC.  These general notes give little support for the extent and types of the limitations the doctor imposed.  For example, Dr. Tomsik found that Plaintiff could perform bilateral fingering or handing only frequently because she had "chronic pain" and suffered from myositis. (Tr. 581).  Without more specific evidence or explanation, these observations do not sufficiently bolster the limitation suggested.  Additionally, these mere diagnoses provided little support for Dr. Tomsik's conclusion that Plaintiff would miss work two to three times per month.  Given the lack of supportability for Dr. Tomsik's RFC statement, the ALJ was entitled to give little weight to the doctor's opinions listed therein.

The Court also notes that immediately following the ALJ's discussion of Dr. Tomsik's RFC, the ALJ rejected Plaintiff's similar self-imposed limitations of occasional handling and fingering, and the need to miss work once per month, on the basis that they conflicted with the record as a whole, including the care Plaintiff was able to regularly provide to her family. (Tr. 24).  As the ALJ observed, Plaintiff was able to cook regularly, do laundry once each week, and provide some care for her daughters who suffer from medical problems. (Tr. 23, 169).  This

lends further support to his analysis that almost identical limitations suggested by Dr. Tomsik lacked support.

Goodlace purports that treatment notes from Dr. Tomsik regarding Plaintiff's impairments and limitations appear throughout the record, and Dr. Tomsik coordinated Plaintiff's care for her conditions by referring her to specialists. Goodlace argues that it follows, that Dr. Tomsik would be in a position to render a reliable opinion as to her RFC, and as such, it should have been adopted. These arguments are not well-taken.

Plaintiff has failed to identify specific treatment records from Dr. Tomsik that would support the limitations he proposed in his April 2011 RFC, particularly those related bilateral gross and fine manipulations and her need for a sit/stand option every thirty minutes. Dr. Tomsik began treating Plaintiff in March 2009, approximately four years after her alleged onset date. (Tr. 379). Dr. Tomsik's rather sparse treatment records provide little objective or detailed support for the extent and types of limitations in his RFC statement. For example, in June 2010, Dr. Tomsik diagnosed Plaintiff with depression, diarrhea, anemia, and back and hip pain; however, besides Plaintiff's subjective complaints, the doctor appears to have recorded no other basis for his findings. (Tr. 380). In October 2010, Dr. Tomsik referred Plaintiff to other healthcare providers to investigate her complaints of diarrhea. (Tr. 483). During February 2011, Plaintiff complained of ear pain, sinus pressure, and headaches and was referred to the Cleveland Clinic. (Tr. 481-82). The doctor also noted Plaintiff was recently diagnosed with fibromyalgia from a rheumatology provider. (Tr. 481). In May 2011, Plaintiff complained of a poor mood and diffuse symptoms of fibromyalgia. (Tr. 551). Based on this, Dr. Tomsik diagnosed depression and fibromyositis and prescribed medication. (Tr. 552). The overall sum of these treatment records, consisting mostly of Plaintiff's subjective complains and Dr. Tomisk's diagnoses,

11

provide little support for the limitations Dr. Tomsik later included in his RFC statement.  The mere fact that the doctor's treatment notes existed in the record, and that he referred Plaintiff to specialists, are insufficient to undermine the ALJ's treating source analysis.

Plaintiff also argues that the ALJ failed to address Dr. Tomsik's opinion that Plaintiff would be limited due to fatigue and pain, resulting in absence from the workplace up to three times per-month. (Tr. 581).  Plaintiff does not cite to any authority mandating that the ALJ address each limitation contained in a treating source statement.  Here, the ALJ sufficiently articulated why he found the April 2011 RFC report was entitled to little weight as a whole.  As a result, the ALJ did not have to individually discuss the limitations included therein.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

                                                        s/ Kenneth S. McHargh  
                                                        Kenneth S. McHargh  
                                                       United States Magistrate Judge

Date:  March 10, 2014.